FACTS
CARLTON, J.,
for the Court:
¶ 1. On December 15, 2000, Gene Abbott and Billy Williamson executed an agreement for the sale of a pharmacy in Vicksburg, Mississippi, operating as SuperCo, Inc. and doing business under the trade name Battlefield Discount Drugs, Inc. (Su-perCo), to John W. Storey and Mitchell Chad Barrett. During contract negotiations, Storey and Barrett agreed that they would not “buy” another location in Warren County -without the consent of Abbott and Williamson, and the parties memorialized this decision in Item (cc) of the agreement.
¶ 2. In 2008, Storey and Barrett planned on opening, as opposed to purchasing, a new pharmacy location at 2080 Frontage Road, with plans to open the pharmacy from the ground up. Storey and Barrett discussed their plan with Abbott and Williamson, both of whom consented. Abbott and Williamson also agreed to work at the new location. However, on April 22, 2009, Storey filed a dissolution of partnership suit against Barrett in the Warren County Chancery Court. Barrett subsequently attempted to obtain the lease on 2080 Frontage Road in his individual name after the lease expired on the initial terms, but he was unsuccessful. Storey was eventually successful in obtaining the lease individually.
¶ 3. After the filing of the dissolution suit, Storey formed Battlefield Express Drugs, Inc. and Battlefield Compounding Center, Inc., both of which he is the sole owner, director, and officer. Simultaneously, Barrett planned to open his own new pharmacy, Vicksburg Special Care Pharmacy. Storey and Barrett both intended to “open the pharmacies from the ground up,” as opposed to purchasing existing pharmacies.
¶ 4. On October 28, 2009, Abbott and Williamson filed their complaint against Storey, Battlefield Express Drugs, Inc., and Battlefield Compounding Center, Inc. in the Warren County Circuit Court, alleging that Storey had secured another location in competition with SuperCo without the consent of Abbott and Williamson, and that such action was in violation of Item (cc) of the December 2000 agreement. In their complaint, Abbott and Williamson sought an injunction to prevent Storey from opening the new pharmacy. Abbott *664 and Williamson cited to Item (cc) of the agreement, which states: “Purchasers agree that they will not buy another location in Warren County without the consent of the Sellers hereto.” At the time the suit was filed, Barrett and Storey were still partners and operators of SuperCo. Abbott and Williamson admitted in their depositions that they had no intentions of bringing suit against Barrett.
¶ 5. Storey denied buying another location in Warren County from any seller and claimed that Abbott and Williamson were aware of this. Storey claimed that Abbott and Williamson had consented to his opening the new store located at 2080 Frontage Road. On November 2, 2009, Storey filed a motion to dismiss and for a judgment on the pleadings, asserting that Storey had not bought another location in violation of Item (cc) of the agreement, but rather had opened another location. Storey submitted that since Abbot and Williamson’s complaint did not allege that Storey had bought anything, per the wording of the agreement, the court should enter a judgment as a matter of law. Abbott and Williamson responded by asserting that Storey secured another location in Warren County in violation of the agreement.
¶ 6. On November 24, 2009, Storey filed a counter-complaint, asserting that Abbott and Williamson violated Item (m) of the agreement by filing their lawsuit against Storey, which thus entitled Storey to receive liquidated damages. Item (m) states:
Additionally, Sellers [Abbott and Williamson] agree that they will develop marketing and other business plans as consultants for the Company on a continued basis for the period of the indebtedness. Upon the breach of this provision by either of the Sellers [Abbott and Williamson], the remaining indebtedness of Purchasers [Storey and Barrett] shall immediately be reduced by fifty percent. ...
Storey also alleged that Abbott and Williamson filed their lawsuit in collusion with Barrett in an attempt to assist him in his dissolution litigation with Storey. Abbott and Williamson denied these allegations, and they asserted that the agreement was subject to the court’s interpretation of the four corners of the parties’ agreement. Abbott and Williamson also argued that they had a vested interest in the financial health of SuperCo to ensure payments of the purchase price.
¶ 7. Abbott and Williamson amended the complaint to include a Mississippi Rule of Civil Procedure 57 declaratory judgment to determine any question of contract construction. Abbott and Williamson also filed a motion for summary judgment as to Storey’s counterclaim.
¶ 8. After a hearing held on October 14, 2010, the circuit court entered an order holding that Storey had not violated Item (cc) of the agreement, and dismissed the complaint filed by Abbott and Williamson. Further, the circuit court held that Abbott and Williamson did not violate Item (m) and thus granted their motion for summary judgment as to Storey’s counterclaim. Storey appealed, and Abbott and Williamson subsequently filed their cross-appeal.
STANDARD OF REVIEW
¶ 9. When reviewing a trial court’s grant of summary judgment, this Court applies a de novo standard of review. Busby v. Mazzeo, 929 So.2d 369, 372 (¶ 8) (Miss.Ct.App.2006). Rule 56(c) of the Mississippi Rules of Civil Procedure provides that summary judgment is proper where “the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact *665 and that the moving party is entitled to a judgment as a matter of law.” When considering a motion for summary judgment, the deciding court must view all evidence in a light most favorable to the non-moving party. Mazzeo, 929 So.2d at 372 (¶ 8). Only when the moving party has met its burden by demonstrating that no genuine issues of material fact exist should summary judgment be granted. Tucker v. Hinds County, 558 So.2d 869, 872 (Miss.1990).
¶ 10. Additionally, when considering a motion to dismiss, this Court’s standard of review is also de novo. “When considering a motion to dismiss, the allegations in the complaint must be taken as true and the motion should not be granted unless it appears beyond doubt that the plaintiff will be unable to prove any set of facts in support of his claim.” Lang v. Bay St. Louis/Waveland Sch. Dist., 764 So.2d 1234 (Miss.1999) (citing T.M. v. Noblitt, 650 So.2d 1340, 1342 (Miss.1995)). On appeal, this Court will not disturb the findings of the trial court unless they are manifestly wrong, clearly erroneous or an erroneous legal standard was applied. Bell v. City of Bay St. Louis, 467 So.2d 657, 661 (Miss.1985).
DISCUSSION
I. Summary Judgment in favor of Abbott and Williamson
¶ 11. Storey argues that the circuit judge erred by granting summary judgment in favor of Abbott and Williamson. Storey argues that a genuine issue of material fact exists, and he claims that the jury should decide whether or not Abbott and Williamson breached Item (m) of the agreement after filing suit against Storey, thus entitling Storey to liquidated damages. Items (m) and (n) provide that:
Sellers [Abbott and Williamson] agree that they will develop marketing and other business plans as consultants for the company on a continued basis for the period of indebtedness. Upon the breach of this provision by either of the Sellers [Abbott and Williamson], the remaining indebtedness of Purchasers [Storey and Barrett] shall immediately be reduced by fifty percent (50%) and payments identified in the following paragraph will be terminated as of the date of said breach.
(n) Following closing, Purchasers [Sto-rey and Barrett] may cause the Company to offer either or both of the Sellers a position of full-time employment. In addition, Purchasers [Storey and Barrett] will pay Sellers [Abbott and Williamson] collectively a consulting fee of $250,000.00, and a non-competition fee of $600,000.00....
¶ 12. Storey claims that Abbott and Williamson filed suit despite knowing that they suffered no injury by Storey nor had they received any late payments from Sto-rey. Storey submits that Abbott and Williamson had an obligation and duty to develop marketing and other business plans, pursuant to the agreement; therefore, filing for an injunction by Abbott and Williamson to prevent Storey from opening a new location is a clear breach of Item (m).
¶ 13. Storey further argues that the agreement specifically calls for liquidated damages for Abbott and Williamson’s breach of their duty to develop marketing and other business plans on a continued basis. Storey cites to the agreement, stating that due to Abbott and Williamson’s alleged breach of Item (m) by seeking an injunction, the remaining indebtedness he owes to Abbot and Williamson must be reduced by fifty percent, and payment of the $250,000 consulting fee and the $600,000 non-competition fee are terminat *666 ed. Storey claims that parties may contract to agree to liquidated damages for a breach of contract, and Mississippi courts will enforce such an agreement.
¶ 14. However, Abbott and Williamson argue that Storey failed to show that they breached Item (m) by filing an injunctive suit against separate companies in competition with SuperCo. Abbott and Williamson state that SuperCo did not constitute the owner or operator of Storey’s new pharmacy as of the date that Abbott and Williamson filed for injunctive relief. Further, Abbot and Williamson assert that the agreement does not apply to Storey’s new companies. Thus, Storey cannot claim the benefit of Item (m) of the agreement, because SuperCo exists as a separate Mississippi corporation distinct from Abbott and Williamson as well as Storey, and the duties and liabilities Abbott and Williamson owed to SuperCo are not owed to Storey as an individual. Storey claims that such reasoning is erroneous because the agreement articulates that “this [Ajgreement shall be binding upon and shall inure to the benefit of the parties to this [Ajgreement.”
¶ 15. Storey further claims that since Abbott and Williamson failed to file suit against Barrett, whom Storey claims “was doing the exact same thing that [he] was doing,” Storey is entitled to punitive damages. Storey submits that Abbott and Williamson suffered no irreparable injury by Storey. However, Abbott and Williamson submit that injunctive relief is preventative in nature, and thus Abbott and Willamson’s lack of proof of harm is irrelevant. Abbott and Williamson also argue Storey provided no proof that Abbott and Williamson’s claims were not legitimate at the time of filing or that they acted with malice.
¶ 16. Turning to the record, in his order granting summary judgment to Abbott and Williamson, the circuit judge found:
[Storey’s] counterclaim is based on [his] allegation that [Abbott and Williamson] violated section (m) by not developing market and other business plans as a consultant for the company for the period of the indebtedness.
[Storey] admit[s] that there were continued discussions with [Abbott and Williamson] about the acquisition of a [leasehold] for the purpose of opening a new drug store. [Abbott and Williamson] disagreed with the plans. [Abbott and Williamson] contend, and the court agrees, that such disagreement by [Abbott and Williamson] could be interpreted as developing marketing and business plans, as contemplated by section (m).
Therefore[,] the court finds that [Abbott and Williamson] did not violated section (m).
Therefore[,] the court finds that the motion for summary judgment as to [Storey’s] counterclaim ... should be granted.
¶ 17. After reviewing the record, we find that Storey failed to present evidence showing an issue of material fact sufficient to survive summary judgment. Specifically, Storey failed to provide sufficient evidence to support his claim that Abbot and Williamson’s lawsuit, filed to prevent Sto-rey from opening another pharmacy, breached Item (m) of the agreement in which Abbott and Williamson committed to “develop marketing and other business plans as consultants for the company on a continued basis for the period of indebtedness.” Viewing all evidence in a light most favorable to Storey, we find Abbott and Williamson met their burden of proving that Item (m) bound them only to develop marketing and other business plans for the company set forth in the agreement — Su- *667 perCo. Mazzeo, 929 So.2d at 372 (¶ 8). Although our reasoning differs from that of the circuit judge, our finding is the same — that no genuine issues of material fact exist. Therefore, we affirm the circuit judge’s grant of summary judgment in favor of Abbott and Williamson. Puckett v. Stuckey, 633 So.2d 978, 980 (Miss.1993).
II. Motion to Dismiss Abbott and Williamson’s Claim Against Sto-rey
¶ 18. On cross-appeal, Abbott and Williamson argue that the circuit court incorrectly dismissed their claim alleging that Storey breached Item (ee) of the agreement. Abbott and Williamson submit that Storey’s actions of negotiating for and obtaining a lease for the purpose of operating a new pharmacy, and opening a drug store with a very similar name to SuperCo, was in complete violation of the agreement’s requirement that the parties shall not operate a competing business in Warren County or “buy” another location in Warren County.
¶ 19. Item (cc) states: “Purchasers [Storey and Barrett] agree that they will not buy another location in Warren County without the consent of the Sellers [Abbott and Williamson] hereto.” (Emphasis added). In their depositions, both Abbott and Williamson admitted that when they sold the pharmacy to Storey and Barrett, they also sold “goodwill,” as specifically addressed in Item (g) of the agreement: “All assets of the business, including the name of the store and all goodwill, are included as part of this purchase price.”
¶20. Storey argues that his and Barrett’s leasing of a building to open a pharmacy does not constitute “buying” another location pursuant to the wording of Item (cc). Storey also argues that the term “buy” is unambiguous; he submits that in order “for someone to buy something, someone has to sell something.” However, Storey contends he did not buy the new pharmacy at 2080 Frontage Road from anyone, nor did he pay anyone for “goodwill” or a covenant not to compete. Storey claims that Abbott and Williamson obviously intended for Storey and Barrett not to purchase an existing pharmacy, because not only would Storey and Barrett be buying the pharmacy, but also the inventory, equipment, and existing goodwill of another distinct ongoing business.
¶ 21. Storey also points to Abbott and Williamson’s testimony that when Storey and Barrett first began discussions about opening a new pharmacy from the ground up, as opposed to buying an existing pharmacy, at 2080 Frontage Road, both Abbott and Williamson agreed with this decision and agreed to work at the new pharmacy. Storey also denies that Abbott and Williamson suffered irreparable harm and injury due to Storey’s opening and operating of the new pharmacy.
¶ 22. In his order granting summary judgment, the circuit judge found:
[S]ince at the time of the filing of [Abbott and Williamson’s] complaint ... [Storey] had not actually purchased another location, but [was] in negotiations to obtain a lease for another location,[Storey] had not violated section (cc) of the contract.... Therefore[,] the present complaint by [Abbott and Williamson] should be and hereby is dismissed.
¶ 23. The transcript from Abbott’s deposition reveals that Abbott, Barrett, Russell Hawkins (a financial adviser), and Briggs Hopson (an attorney), contributed the majority of input regarding the contents and drafting of the agreement in dispute. Additionally, Item (s) of the agreement provides:
*668 The undersigned state that each have been represented by the same legal counsel and have entered into this [a]greement after full, mature deliberation. This [a]greement shall be deemed to have been prepared jointly by the parties hereto, and any uncertainty and ambiguity existing shall not be interpreted against any party by reason of its drafting of this [ajgreement, but shall be interpreted according to the application of the general rules and laws regarding arm’s length transactions.
¶ 24. The Mississippi Supreme Court has established that “[t]he primary purpose of all contract construction principles and methods is to determine and record the intent of the contracting parties.” Facilities, Inc. v. Rogers-Usry Chevrolet, Inc., 908 So.2d 107, 110 (¶ 6) (Miss.2005) (quotation omitted). When interpreting the parties’ intent in a contract, the court will first look to the four corners of the contract itself, read the contract as a whole, and give effect to all of its clauses. Id. at 111 (¶ 10). The reviewing court’s concern is “not nearly so much with what the parties may have intended, but with what they said, since the words employed are by far the best resource for ascertaining the intent and assigning meaning with fairness and accuracy.” Id. If the contract’s language is clear and unambiguous, the trial judge must effectuate the parties’ intent. Houston v. Willis, 24 So.3d 412, 419 (¶ 25) (Miss.Ct.App.2009). This Court is “bound to enforce contract language as written and give it its plain and ordinary meaning if it is clear and unambiguous.” Mississippi Farm Bureau Cas. Ins. Co. v. Britt, 826 So.2d 1261, 1266 (¶ 14) (Miss.2002). Any ambiguities in the contract will be construed against the party who drafted it. Wade v. Selby, 722 So.2d 698, 701 (¶ 9) (Miss.1998).
¶ 25. In the present case, the circuit judge’s order reflects no determination that the term “buy,” as used in the agreement, was ambiguous or unclear. See Henry v. Moore, 9 So.3d 1146, 1152 (¶ 16) (Miss.Ct.App.2008) (“Contract construction and interpretation requires that the court first consider whether the contract is ambiguous.... [I]f the contract is unambiguous, this Court must accept the plain meaning of a contract as the intent of the parties.”). Further, the circuit judge found that since Storey was in negotiations to lease another location, Storey had not actually purchased, nor yet leased, a new pharmacy location;[1] therefore, Storey had not breached the agreement. Since Abbott and Williamson failed to provide evidence of Storey actually buying another pharmacy, as prohibited by the agreement, we concur with the circuit judge’s finding of no breach of the agreement by Storey. We thus affirm the circuit judge’s dismissal of Abbott and Williamson’s complaint.
¶ 26. THE JUDGMENT OF THE WARREN COUNTY CIRCUIT COURT IS AFFIRMED ON DIRECT AND CROSS-APPEAL. ALL COSTS OF THIS APPEAL ARE ASSESSED ONE-HALF TO THE APPELLANTS AND ONE-HALF TO THE APPELLEES.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT.

. As noted by the trial court, no evidence was presented to show that Storey had entered into a leasing agreement with another pharmacy.