BARNES, J.,
for the Court:
¶ 1. John Mike Hardin filed an action in the Chancery Court of Calhoun County against Rainbow Ranch Inc. to dissolve the corporation judicially. John was one of four siblings who were all shareholders of Rainbow Ranch. He owned 23.6% of its outstanding stock. John also sued on various other claims and for punitive damages. Rainbow Ranch subsequently filed an election to purchase John’s shares of stock and interest. Additionally, John sought to partition his twenty-five percent interest in the Estate of Mabel Hardin, the shareholders’ deceased mother. The parties consolidated the estate property with Rainbow Ranch’s assets. The chancery court appointed an appraiser to determine *343 the value of Rainbow Ranch’s assets and the estate property.
¶2. At the hearings on the matter, Rainbow Ranch moved to elect to purchase John’s shares. John, however, requested his interest be distributed in-kind by awarding him acreage. The chancery court’s final judgment awarded John a single, contiguous tract of real property in lieu of a cash buy-out, and which included his portion of the estate acreage. For the distribution to be equal, the court ordered John to pay Rainbow Ranch $5,807 in order to balance the value of the acreage awarded to him against his actual interest. The court also awarded John his share, or 23.6%, of Rainbow Ranch’s accounts, profits from 2011 crops, equipment, and repairs, as well as twenty-five percent of the value of the estate crops for 2011. Finally, the court dismissed ' without prejudice John’s ancillary claims for damages against Charles and James Hardin. Aggrieved, Rainbow Ranch appealed. John cross-appealed the dismissal of his claims for damages. We affirm the chancellor’s ruling on the distribution of the corporate assets to John, but reverse and remand the dismissal of John’s ancillary claims.
STATEMENT OF THE FACTS AND PROCEDURAL HISTORY
¶ 8. Rainbow Ranch, an active “family farm,” is located in Calhoun County, Mississippi. It was incorporated by the litigants’ late father in 1961 to keep the property in the family indefinitely and avoid division of the property upon the father’s death. The real property consists of approximately 1096 acres of cropland, pasture, ponds, and pine and hardwood forests. Other assets include cash, farm equipment, and future crop payments. Shares of stock were distributed among the four siblings: John, Charles, James, and Nita. Charles and James have resided on the corporate property in two separate homes for several years. Their homes are owned and maintained by Rainbow Ranch. John also used his own funds to construct a cabin on a portion of Rainbow Ranch. The shareholders claim to have a sentimental attachment to the land.
¶ 4. Disagreement arose among the siblings, and in May 2007, John filed a complaint seeking judicial dissolution of Rainbow Ranch under the Mississippi Business. Corporations Act (MBCA),[1] and damages against his brothers, Charles and James, based upon theories of fraud, conversion, breach of fiduciary duty, and unjust enrichment, as well as punitive damages and imposition of a constructive trust. John contended the court should order all corporate assets be sold for cash to the highest bidder at public auction, and the proceeds divided among the shareholders based on their ownership interests. The Defendants answered and counterclaimed, seeking damages under the Litigation Accountability Act and damages for other claims. The parties could not agree on the fair market value of the real property and assets held by the corporation; so by agreement of the parties, the court appointed Tim Pepper as an appraiser.
¶ 5. The siblings were also sole beneficiaries of the Estate of Mabel Hardin (Estate). Mabel passed away in 2000. John sought to partition his twenty-five percent interest in the real property of the Estate, which was separate from Rainbow Ranch, but surrounded by the corporation’s property. The Estate totaled approximately 192 acres with a value of approximately *344 $371,469. To consolidate the claims, the parties agreed to include the partition action with John’s action for corporate dissolution of Rainbow Ranch.
¶ 6. In response to John’s complaint to dissolve the corporation, in April 2010, Rainbow Ranch filed an election to purchase his 23.6% of shares under the MBCA. John objected to the election, because it was not filed within ninety days of John’s complaint to dissolve the corporation, as required under the MBCA. In October 2010, a hearing was held, and John withdrew his objection. The chancellor granted the Defendants’ election to purchase shares. Also, the court heard evidence regarding the value of the corporation’s assets. All of the parties testified that the fair market value of the corporation’s real property, timber, and other assets was the amount indicated by Pepper’s appraisal.
¶ 7. The evidence showed John owned 110.5 shares of the 472 outstanding shares of Rainbow Ranch, or 23.6%. The fair market values of various assets, including the Estate partition, were: real estate of $2,060,000, farm equipment of $20,875, and cash on hand of $203,881.98. James testified Rainbow Ranch would complete the transaction of a cash purchase for John’s shares within ten days if the court ordered it to do so. The court continued the proceedings to have Pepper, who had been accepted at the hearing as an expert in rural land appraisal, to calculate the value of Rainbow Ranch and the Estate, and fashion a possible in-kind division- of real property for John.
¶ 8. In April 2011, Pepper submitted a lengthy recommendation on a proposed in-kind division of both Rainbow Ranch and the Estate real property. In June 2011, Rainbow Ranch filed an objection to this method of distributing the corporate assets. In September 2011, the chancellor issued an order nunc pro tunc to the date of the initial hearing in October 2010, granting Rainbow Ranch’s election to purchase shares, as previously stated, but reserving the right to provide John with an in-kind division of land from the Estate and Rainbow Ranch in lieu of a cash payment. The chancellor also dismissed without prejudice all other claims filed by John, and the Defendants’ counterclaim against John. ■
¶ 9. At the final hearing in March 2012, the court ordered Rainbow Ranch to convey real property to John in return for his shares of stock in Rainbow Ranch, in lieu of a cash buy-out. The chancellor stated this resolution was fairest, because Rainbow Ranch was a “closely held family farm” run by the siblings, and included their mother’s estate. The property division was based upon Pepper’s analysis of the fairest way to divide the corporate and Estate property. Pepper’s report and testimony showed he took into account the ownership interests of the parties, the value of the varying land classes, structural and land improvements, existing agricultural leases, conservation contracts, timber values, and the use of sectional, quarter sectional, and natural boundaries to divide the property. Pepper appraised all of the assets of Rainbow Ranch and the Estate (land and improvements) at $2,059,501, with total acreage of 1,288. John received a single, contiguous tract of real property, which was 309.6 acres, with a land value of $385,922, and included a mixture of cropland, pasture, ponds, and pine and hardwood forests. The tract included John’s fishing cabin, which is dilapidated. Improvements to the land, including structures, conservation contracts, and timber, were valued at $111,228, for a total value of $497,150 for John’s portion.
¶ 10. In order for the distribution to be equal, the chancellor ordered John to pay *345 Rainbow Ranch $5,907 for the difference in the property value he received and his actual interest value.[2] The chancellor wanted the parties to agree and hire a surveyor, who would be paid out of .the corporate account. John also received twenty-five percent of the proceeds from the Estate’s 2011 crop, as well as 23.6% of the following assets: $203,881.98 cash on hand in the bank, the proceeds from the ranch’s 2011 crop, and $24,375 in farm equipment. John was also reimbursed his 23.6% share for several expenditures the corporation made to improve structures on the ranch, including $1,500 for a building, $500 for a bathroom in a home of one of his siblings, and $300 for a minnow shed.
STANDARD OF REVIEW
¶ 11. This Court employs a limited standard of review in appeals from chancery court. A chancellor’s decision will be reviewed for an abuse of discretion. We will not disturb a chancellor’s factual findings “when supported by substantial evidence unless ... the chancellor abused his discretion, was manifestly wrong, clearly erroneous or applied an erroneous legal standard.” Venture Sales, LLC v. Perkins, 86 So.3d 910, 913 (¶ 11) (Miss.2012) (citations omitted). A chancellor’s decision will be affirmed when it is supported by substantial credible evidence. Questions of law are reviewed de novo. Id.
ANALYSIS
¶ 12. Rainbow Ranch raises one issue — whether the chancellor had the authority to use his equitable powers to fashion an alternative remedy to the cash payment for John’s shares of Rainbow Ranch by awarding John an in-kind division of land. We find he did and affirm.
¶ 13. Rainbow Ranch argues that even though a chancellor is endowed with certain powers of equity, alternative equitable remedies should not overtake those provided by law. It claims the MBCA provides a clear, unambiguous framework for shareholders to purchase the shares of disgruntled shareholders instead of dissolving the corporation. Rainbow Ranch states the chancellor went beyond what was necessary to resolve the dispute, to the detriment of the corporation. The corporation claims it was “ready, willing, and able” to purchase John’s outstanding shares within ten days, but instead, the chancellor made an unnecessary alternative resolution.
¶ 14. The MBCA outlines the procedures for dissolution of corporations. A court may dissolve a corporation if it is established that “the directors or those in control of the corporation have acted, are acting, or will act in a manner that is illegal, oppressive or fraudulent.” Miss. Code Ann. § 79-4-14.30(a)(2)(ii) (Rev. 2013). After a shareholder has requested judicial dissolution of a corporation, the corporation or other existing shareholders “may elect to purchase all shares owned by the petitioning shareholder at the fair value of the shares,” in lieu of dissolution. Miss.Code Ann. § 79^4-14.34(a). An election under this section “shall be irrevocable unless the court determines that it is equitable to set aside or modify the election.” Id. If the parties cannot reach an agreement as to the fair value of the shares to be purchased, the court, upon application of any party, shall stay the proceedings and make a determination as to the fair value of the petitioner’s shares. *346 Miss.Code Ann. § 79-4-14.34(d). The election to purchase shares “may be filed with the court at any time within ninety (90) days after the filing of the petition” or at any later time the court, at its discretion, may allow. Miss.Code Ann. § 79-4-14.34(b). Finally, “[n]othing contained in [section 79^1-14.34] shall diminish the inherent equity powers of the court to fashion alternative remedies to judicial dissolution.” Miss.Code Ann. § 79-4-14.34(i). Regarding ordering the sale of land, Mississippi Code Annotated section 11-21-11 (Rev. 2004) provides:
If, upon hearing, the court be of the opinion that a sale of the lands ... will better promote the interest of all parties than a partition in kind, or if the court be satisfied that an equal division cannot be made, it shall order a sale of the lands, or such part thereof as may be deemed proper, and a division of the proceeds among the cotenants according to their respective interests.
¶ 15. The chancellor based his ruling on evidence he heard at the hearings and the detailed, eighty-six page “Uniform Agricultural Appraisal Report” compiled by Pepper. The chancellor stressed that he thought his ruling was fair because the property dealt with a “closely held [incorporated] family farm” and their mother’s estate. A review of the record shows the court’s division in-kind of the real property was an equitable result supported by sufficient credible evidence. Accordingly, the chancellor did not abuse his discretion in making this ruling.
¶ 16. Rainbow Ranch cites the well established principle that “equity follows the law.” See Joel v. Joel, 43 So.3d 424, 430 (¶ 19) (Miss.2010). The corporation argues, however, that the equitable remedies imposed here do not follow the MBCA for corporate dissolution. We are not persuaded by this argument. Initially, John sought judicial dissolution and suggested the chancery court sell at auction the corporate assets for cash and divide the proceeds among the shareholders. Rainbow Ranch’s election to purchase John’s shares under section 79-4-14.34(a) was granted, but the chancellor was still within his right to reserve an in-kind division of land in lieu of a cash payment. Section 79^— 14.34(i) specifically allows for the “inherent equity powers of the court to fashion alternative remedies to judicial dissolution.” And indeed, at the outset of the hearing on the matter, the chancellor stated that he was inclined to exercise his equitable powers to fashion an appropriate remedy. Because the parties could not agree on the fair market value of the corporate assets, an appraiser was ordered and agreed upon, as directed by section 79-4-14.34(d). The appraiser’s values were never challenged by the parties. The chancellor even commented that Pepper had done a “magnificent job” in assigning values to timber, improvements, ponds, and conservation contracts on the property of Rainbow Ranch and the Estate, and fashioning an equitable distribution of the property between the feuding siblings.
¶ 17. There is also no merit to Rainbow Ranch’s argument that once an election to purchase shares was granted, a sale of the shares for cash instead of land should have been “irrevocable.” Under section 79-4-14.34(a), the court, in equity, can always “set aside or modify the election.” Even though Rainbow Ranch was “ready, willing, and able” to pay for John’s interest in the corporation, the chancellor was not required to order a buy-out, which the corporation speculated was the most “cost effective,” “easiest,” and “direct resolution” to the dispute. The court also exercised its discretion under the MBCA to allow Rainbow Ranch to proceed with the election to purchase the shares outside of *347 the ninety-day time limit prescribed by section 79-4-14.34(b). According to the above proceedings, we cannot say that the MBCA was improperly followed.
¶ 18. Rainbow Ranch cites Dawkins v. Hickman Family Corp., No. 1:09-CV-164, 2010 WL 4683472 (N.D.Miss. Nov.10, 2010), as factually analogous. The plaintiff, a shareholder, filed a petition for judicial dissolution of the “Hickman Family Corporation” under the MBCA, alleging fraudulent conduct by the corporation’s board of directors. Id. at *1. However, Dawkins dealt only with pretrial motions in the district court for the determination of the fair value of shares and summary judgment. Id. The district court merely stayed the proceedings to allow the petitioning shareholders to offer additional evidence on the fair value of the shares to be purchased. Id. at *6. We do not find this case helpful to Rainbow Ranch’s argument.
¶ 19. Further, there was no objection by any of the parties to consolidating the corporate-dissolution proceedings with the estate partition. Since the Estate property had not been divided, John filed a partition suit and asked the court to partition in-kind the estate property, or sell it and divide the proceeds. The other siblings argued that the Estate property could not be fairly partitioned, and it should be sold. However, to avoid dissolution of the corporation and fairly divide the combined corporate and estate assets between the siblings, the chancery court approved Pepper’s division, which allowed John to keep a small portion of the estate land, along with Rainbow Ranch land, in one contiguous tract, upon which his cabin is situated. Alternatively, Charles, James, and Nita were able to keep their closely held family-farm corporation intact with ownership of a large contiguous tract of land, upon which Charles and James had homes and had lived for many years. Accordingly, the chancellor did not abuse his discretion in creating an equitable remedy for the parties.
CROSS-APPEAL
¶ 20. John cross-appealed the dismissal without prejudice of his claims for damages against Charles and James based upon theories of fraud, conversion, breach of fiduciary duty, unjust enrichment, and the imposition of a constructive trust, and for punitive damages. At the initial hearing, the chancellor stated the issues outside of the dissolution were “circuit court matters,” and that the parties could “take that to Judge Lackey’s court and talk to him about that.” John maintains that because these claims are directly related to the underlying dispute between the parties, the chancellor abused his discretion in dismissing these claims and suggesting that the claims be pursued in circuit court. We agree and find the chancery court’s dismissal in error.
¶21. In Cuevas v. Kellum, 12 So.3d 1154 (Miss.Ct.App.2009), our Court addressed a similar situation. Margaret Kel-lum sought to dissolve her partnership with Denise Cuevas, and Cuevas filed a separate complaint, requesting injunctive relief and asserting, among other claims, a breach of fiduciary duty. Id. at .1155-56 (¶¶ 1-3). However, in the dissolution of the partnership, Cuevas’s individual claims were never resolved. Id. at 1157 (¶ 12). On appeal, Kellum argued that the chancery court did not have jurisdiction to address Cuevas’s claims. Id. at (¶ 14). However, this Court noted that if the complaint provides “an independent basis for equity jurisdiction, our chancery courts may hear and adjudge law claims.” Id. at (¶ 15) (quoting Issaquena Warren Counties Land Co. v. Warren Cnty., 996 So.2d 747, 751 (¶ 10) (Miss.2008)). “In such circumstances, the legal claims lie within the *348 pendent jurisdiction of the chancery court.” Id. Therefore, we reversed the chancellor’s judgment and remanded “to allow evidence to be presented on the remaining claims.” Id. at 1158 (¶ 15). More recently, we reiterated this stance:
It has long been settled in this state, as one of the pre-eminent principles of equity procedure, that the [cjhancery [e]ourt haying taken jurisdiction on any one ground of equity, will thereupon proceed in the one suit to a complete adjudication and settlement of every one of all the several disputed questions materially involved in the entire transaction, awarding by a single comprehensive decree all appropriate remedies, legal as well as equitable, although all the other questions involved would otherwise be purely of legal cognizance; and in this state, the rule goes even to the extent that if the ground of equity fail under the proof, the cause may still be retained to a complete final decree on the remaining issues although the latter present legal subjects only and the decree would cover only legal rights and grant none but legal remedies [] — that having taken jurisdiction the power of the court to administer full relief is limited by nothing but justice itself.
Knights’ Piping Inc. v. Knight, 123 So.3d 451, 455-56 (¶ 13) (Miss.Ct.App.2012) (quoting Derr Plantation, Inc. v. Swarek, 14 So.3d 711, 718 (¶ 16) (Miss.2009)).
¶ 22. Accordingly, we find that the chancery court had jurisdiction over John’s remaining claims, and we reverse the chancery court’s dismissal and remand for further proceedings. We express no opinion as to the validity of these claims.
¶ 23. THE JUDGMENT OF THE CHANCERY COURT OF CALHOUN COUNTY IS AFFIRMED ON APPEAL AND REVERSED AND REMANDED ON CROSS-APPEAL. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT/CROSS-APPEL-LEE.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.

. Specifically, the election was made under Mississippi Code Annotated section 79-4-14.34 (Rev. 2013) of the MBCA.

. Due to John’s percentages of ownership of 23.6% in Rainbow Ranch and 25% in the Estate, he was entitled to 306.9 acres valued at $491,243, but Pepper’s equitable division allotted him 309.6 acres for a total value with improvements of $497,150, for a difference of $5,907.