# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-01773-COA

**CHRISTOPHER DEANS**                                                                **APPELLANT**

**v.**

**KATHY REED MCCOLUMN**                                                              **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 09/19/2013 |
| TRIAL JUDGE: | HON. WILLIAM H. SINGLETARY |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | JANE E. TUCKER |
| | SHARON D. HENDERSON |
| ATTORNEYS FOR APPELLEE: | S. MALCOLM O. HARRISON |
| | DAVID NEIL MCCARTY |
| NATURE OF THE CASE: | CIVIL - OTHER |
| TRIAL COURT DISPOSITION: | DISSOLVED PARTNERSHIP AND DIVIDED ASSETS |
| DISPOSITION: | AFFIRMED - 06/23/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., ROBERTS AND JAMES, JJ.**

**LEE, C.J., FOR THE COURT:**

¶1.     In this case, we must determine whether the chancellor properly dissolved a partnership. We find no error by the chancellor and affirm.

## PROCEDURAL HISTORY

¶2.     In 1998, Christopher Deans and Kathy McColumn, both physical therapists, formed Therapy First Outpatient Rehabilitation LLC (Therapy First). According to the operating agreement, Deans and McColumn each had a fifty-percent interest in Therapy First. The parties, through Therapy First, purchased a commercial building in Jackson, Mississippi, for

their physical-therapy business.

¶3.     In December 2011, McColumn filed a petition for dissolution in the Hinds County Chancery Court. Deans subsequently filed a counterclaim alleging fraud, breach of contract, breach of fiduciary duties, and conversion. McColumn filed a motion to strike Deans's counterclaim. The chancellor granted the motion to strike the counterclaim. A special master, Oran C. Page, was appointed to review all applicable information to assist the chancellor in dissolving Therapy First.

¶4.     After a trial, the chancellor adopted the findings of the special master and ordered Therapy First to be dissolved.

¶5.     Deans now appeals, arguing several issues, which we have condensed as follows: (1) the chancellor erred by dismissing his counterclaim, and (2) the chancellor's findings were unsupported by the record. McColumn filed a motion to dismiss this appeal, which we will address as issue three.

FACTS

¶6.     Therapy First was formed in 1998. At first Deans and McColumn remained working for their previous employer, Mid-Delta Home Healthcare. Deans worked at Therapy First in the morning and Mid-Delta in the afternoon. McColumn worked at Mid-Delta in the morning and Therapy First in the afternoon. Approximately one year later, Deans and McColumn were able to leave Mid-Delta and work full-time for Therapy First. While both Deans and McColumn worked as physical therapists, McColumn also acted as the business manager.

2

¶7. In 2002, Therapy First acquired a yearly contract to service patients at Jefferson County Nursing Home in Fayette, Mississippi. Deans was primarily responsible for fulfilling the services under this contract, driving to Fayette five days a week. In 2007, Deans and McColumn opened another Therapy First in McComb, Mississippi. Deans began to split his time between the McComb location and the nursing home. Deans and McColumn also opened a medical supplies company, which ceased operations after a few years. The McComb location of Therapy First was unsuccessful and closed in 2008.

¶8. McColumn testified that in 2008, she received a phone call from the administrator of the nursing home in Fayette. McColumn was informed that Deans was no longer providing services to the residents. The administrator told McColumn that Deans was working for another nursing home. McColumn testified she had to coax Deans into working at the nursing home for the remainder of their contract in order to avoid breaching the contract. Deans testified that he did start working for another nursing home located in Port Gibson, Mississippi, in June 2008.

¶9. Although Deans was still a partner in Therapy First, he did not see patients there after June 2008. In December 2009, Deans withdrew $9,000 from the Therapy First account for what he termed "profit sharing." McColumn became aware of this after the bank informed her that the account did not have sufficient funds to cover other payments. McColumns continued to provide services to the patients at Therapy First until 2011, when she started a new company named Physical Therapy First LLC. McColumn apparently failed to inform Deans that she had opened a new physical therapy business in the same building as Therapy

3

First. At some point McColumn, with Deans's permission, also formed, Deans and Mac LLC, as a vehicle to hold title to the real property owned by her and Deans. Her new company and another tenant renting part of the Therapy First building paid rent to Deans and Mac LLC.

¶10. McColumn testified that Deans entered the Therapy First building in late 2011 and removed everything, including equipment, computers, therapy machines, patient files, and some of her personal items. Shortly thereafter, McColumn filed a temporary restraining order as well as her request for a judicial dissolution of Therapy First.

¶11. In his report, the special master examined the books and records of Therapy First and documented the income, expenses, and distributions for 2008 through 2011. In 2008, the special master noted Deans received a distribution of $7,794 and McColumn received $9,894. The special master noted McColumn suffered a $7,654 loss to her capital account in 2009, and Therapy First operated at a net loss, so there was no distribution. That same year, Deans withdrew $9,000 from the Therapy First account. In 2010, Deans and McColumn each received a distribution of $20,559. In 2011, McColumn received a $44,577 distribution. The special master recommended the Therapy First building be sold and the proceeds be used to pay the mortgage indebtedness. Any remaining proceeds were to be deposited in the court registry to pay off other creditors. The special master also recommended that the personal property of Therapy First, valued at $25,130, be sold and any proceeds also be placed in the court registry. The special master determined that McColumn was a creditor of Therapy First and was entitled to any assets remaining following payments

4

to creditors. The special master further determined McColumn formed Physical Therapy First without using any of the capital or equipment from Therapy First.

¶12. After a trial, the chancellor adopted the special master's findings and made further findings as follows:

> In consideration of the evidence that Deans contributed nothing to the partnership businesses . . . after June[] 2008, the Court finds that he was entitled to not more than approximately one-quarter of the total of $17,688 in distributions made to partners for that year, or $4,422. Since he received a distribution of $7,794 in 2008, he is considered and found by the Court to be a debtor of the partnership businesses for said item in the sum of $3,372. For calendar year 2009[,] Deans is also found by the Court to be a debtor of the partnership businesses in the amount of the $9,000 he withdrew from corporate operating account in that year, as mentioned above, and in the sum of $3,827 representing his fifty percent (50%) portion of the loss from the businesses reflected in the partners' capital accounts. Finally, in calendar year 2010[,] Deans is considered and found by the Court to be a debtor of the partnership businesses in the sum of $20,559, the amount of the distribution to each of the partners during a year in which he had no involvement with [or] contribution to the businesses. Deans is, therefore, found by the Court to be a debtor of the partnership businesses in a total sum of not less than $36,758.

The chancellor also agreed that McColumn was a creditor because she paid all overhead and expenses of the business, including mortgage payments of $1,250 per month, for the three years Deans ceased working at Therapy First. The chancellor noted McColumn had reduced Therapy First's indebtedness and renovated and improved the Therapy First building with no assistance from Deans. The chancellor valued the remaining assets at $77,127.32 and determined that Deans's share, or $38,563.66, would be offset by the amount of his debt, or $36,758.

## STANDARD OF REVIEW

¶13. This Court employs a limited standard of review in appeals from chancery court. "We

5

will not disturb a chancellor's factual findings when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous[,] or applied an erroneous legal standard." *Venture Sales LLC v. Perkins*, 86 So. 3d 910, 913 (¶11) (Miss. 2012). When considering a motion to dismiss, this Court applies a de novo standard of review. *Storey v. Williamson*, 101 So. 3d 662, 665 (¶10) (Miss. Ct. App. 2012). "When considering a motion to dismiss, the allegations in the complaint must be taken as true and the motion should not be granted unless it appears beyond doubt that the plaintiff will be unable to prove any set of facts in support of his claim.*" Lang v. Bay St. Louis/Waveland Sch. Dist.*, 764 So. 2d 1234, 1236 (¶7) (Miss. 1999) (citation omitted).

## DISCUSSION

### I. COUNTERCLAIM

¶14. The hearing on McColumn's motion to strike Deans's counterclaim occurred on February 24, 2012. After listening to arguments from both Deans and McColumn, the chancellor stated the following:

> [McColumn's] motion to dismiss the counterclaim is granted. And I will not strike the answer because I think that it might in some way be helpful to the special master, I suppose. But the counterclaim, for purposes of the relief that it directly requests of the Court as a separate matter to the winding up of the business is granted. So you need to make these positions known to the special master, who is in a position to investigate all these things . . . and to address the relative equities between the parties and to make a recommendation to the Court about how to wind up and dissolve this business equitably to both parties, and all this - - all this will be considered by him if you make it known to him.

Deans's attorney was confused by this statement, so the chancellor responded that the parties were to provide "the special master with all the information that he needs relevant to the

6

parties' business dealings together so that he can formulate his opinions and recommendations to the Court." In a written order dated March 19, 2012, the chancellor granted McColumn's motion to dismiss Deans's counterclaim. On March 5, 2013, Deans filed a separate lawsuit in the Hinds County Circuit Court against McColumn, raising the same allegations as his counterclaim.

¶15. Although the chancellor technically granted McColumn's motion to dismiss Deans's counterclaim, he did state that any issues relating to the "parties' business dealings together" would be allowed. Additionally, the chancellor stated Deans would be allowed to address any concerns to the special master. The chancellor also heard evidence regarding Deans's claims against McColumn of conversion and breach of fiduciary duty. Since the chancellor was presented with testimony relating to Deans's counterclaim, we cannot find that Deans was unduly harmed by the chancellor's ruling.

¶16. We note that McColumn contends Deans's counterclaim was based in tort, and thus the chancery court lacked jurisdiction. However, caselaw states that a chancery court has pendent jurisdiction over similar ancillary claims. *See In re Hardin*, 158 So. 3d 341, 347-48 (¶21) (Miss. Ct. App. 2014) (citing *Cuevas v. Kellum*, 12 So. 3d 1154, 1157-58 (¶15) (Miss. Ct. App. 2009)).

## II. INSUFFICIENT EVIDENCE

¶17. Deans contends the chancellor's findings were not based upon credible evidence. Deans claims the special master and the chancellor disregarded evidence that showed McColumn committed malfeasance. The special master testified that he reviewed hundreds

7

of pages of business records and affidavits from the parties. These records included tax records, detailed receipts, inventory lists, and bank statements. The special master noted that most of the records he examined were produced by Deans, including "four or five notebooks which were about sixteen to twenty inches thick." The chancellor heard testimony from the special master, Deans, and McColumn. After reviewing the comprehensive findings by the special master and the chancellor as previously noted in the facts section, we find the chancellor's findings were based upon credible evidence. This issue is without merit.

III. MOTION TO DISMISS APPEAL

¶18. McColumn filed a motion to dismiss this appeal, arguing that Deans's appeal is barred because he filed his counterclaim in the circuit court. However, since we are affirming the chancellor's ruling regarding the counterclaim, we find it unnecessary to address the merits of this motion. Therefore, McColumn's motion to dismiss the appeal is denied.

¶19. **THE JUDGMENT OF THE HINDS COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT. JAMES, J., CONCURS IN PART.**